Albert Grady and Commonwealth Concerns, Inc., Appellants, *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Appellee.

Argued March 4, 1975, before President Judge Bow-
man and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Mencer, Rogers and Blatt.

*Joseph N. Bongiovanni, III,* with him *Joseph L. Della
Guardia* and *Speese, Kephart & Bongiovanni,* for appel-
lants.

*Marx S. Leopold,* Chief Counsel, for appellee.

Opinion by Judge Wilkinson, Jr., April 24, 1975:
This case is an appeal from an order of the Secretary
of the Public Welfare granting a license to appellants

to operate group homes[1] for mentally retarded individuals subject to certain restrictions contained in that order. Appellants argue that the Secretary's action in restricting their license was not based on competent evidence and deprived appellants of their property without due process of law. In order to pass upon these questions, we must set forth in some detail the relevant facts that form the basis of this appeal.

We are dealing with three entities in this case: the two appellants, Albert Grady, an individual renowned in the field of treatment and care of mentally retarded persons, and Commonwealth Concerns, Inc., a corporation set up to deliver mental health services; and also Commonwealth Concerns of Hawley, Inc. (Hawley), a corporation owned by Commonwealth Concerns, Inc., and set up to operate an institutional for retarded young males at Hawley, Pennsylvania. Hawley is not a party to this action. It appears from the record that Grady was instrumental in organizing Hawley, but did not personally direct the day-to-day operations there . However, it also appears that there is a close correlation between the officers and directors of Hawley and the officers and directors of Commonwealth Concerns. Inc.[2]

After two tragic deaths occurred at the Hawley institution in August of 1971, the Secretary immediately closed Hawley and subsequently prevented various counties which were dealing with Commonwealth Concerns, Inc. from funding any Commonwealth Concerns, Inc.

---

1. "Group homes" is the common name for special living arrangements that are made for certain mentally retarded persons. See 3 Pa. Bull. 338 (February 17, 1973).

2. The same four men were involved in both corporations although the positions held with each corporation are not identical. Rev. Grady was the Secretary of Hawley and the President of Commonwealth Concerns, Inc. He also admitted that Commonwealth Concerns, Inc. owned all the stock of Hawley and received 10% of the management fees paid to Hawley.

institutions. An appeal was filed to this Court contesting the Secretary's order closing Hawley; however this appeal was dropped upon an agreement of prior counsel for Commonwealth Concerns, Inc. and the Department of Public Welfare[3] that a hearing would be held to ascertain the competency of Grady, Commonwealth Concerns, Inc., and Hawley to operate group homes in accordance with the regulations contained in 3 Pa. Bull. 338 (February 17, 1973).

The Secretary specially appointed a hearing examiner who took testimony and filed a report and recommendation. Based on that report, the Secretary ordered: that Hawley was not competent to operate any facility in Pennsylvania; that Albert Grady and/or Commonwealth Concerns, Inc. would be limited to operation of three group homes at any time, and those homes must be located within fifty miles of Grady's home or Commonwealth Concerns, Inc.'s principal place of business. The order also provided for possible additional group homes after two years. This appeal has been taken from the above order.

The evidence of record in this case concerns, for the most part, the conditions and occurrences at the Hawley institution. Appellants object to the relevancy of such evidence because, they argue, the issue to be determined is the competency of appellants to run group homes, not what happened at the Hawley facility run by a separate corporation. We believe that such evidence is relevant and properly admitted. Merely because we are dealing with a separate corporation, we cannot hold that the Secretary must completely ignore the nexus between ap-

---

3. This agreement was not made a part of the record, and its terms are not completely agreed to by both counsel in this appeal. However, we need not be concerned with the legality of the *revocation* of the Hawley license, since this appeal is taken by Grady and Commonwealth Concerns, Inc. to an order limiting their ability to operate group homes.

pellants and Hawley that was shown to exist. In a licensing proceeding involving the discretion of the Secretary[4], the manner in which a corporation, set up by one appellant and wholly owned by the other appellant, operated a mental health facility is clearly relevant to ascertain the competency of those appellants to run other mental health facilities. That Commonwealth Concerns, Inc. and Grady were not directly involved in the day-to-day operations of Hawley is a factor that was correctly considered in weighing the evidence concerning Hawley and constituted a proper exercise of the Secretary's fact-finding powers.

However, even though we hold the Hawley evidence to be relevant, this is not dispositive of the case. We are dealing with a licensing procedure to determine the competency of appellants to run group homes in accordance with regulations contained in 3 Pa. Bull. 338. The record is devoid of any evidence or findings[5] concerning the group homes criteria set forth in those regulations, i. e., budgeting, staffing, expensing, living arrangements, etc. Since there have been totally inadequate findings of fact, a remand for further administrative action is necessary for the fulfillment of the administrative process. See Bergis v. Industrial Board of the Department of Labor and Industry, 9 Pa. Commonwealth Ct. 558, 308 A. 2d 643 (1973). We, therefore, remand this record to the Secretary to take additional evidence and make findings of fact and conclusions of law which relate to the competency of appellants to hold a license for the operation of group homes in light of the regulations adopted for group homes, and the regulations, if any, pertaining to licensing in general.

Accordingly, we enter the following

---

4. See Section 1007 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, as amended, 62 P. S. §1007.

5. The report of the hearing examiner, adopted by the Secretary, merely recited some of the regulations and states that they must be followed by the appellants.

NOW, April 24, 1975, this record is remanded to the Secretary of Public Welfare for action not inconsistent with this opinion.